UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Case No. 1:25-CR-108 (CRC) |
| LEVITA ALMUETE FERRER, | ) ) ) | |
| Defendant. | ) ) | |

**RESPONSE OF DEFENDANT LEVITA FERRER TO GOVERNMENT'S
MOTION TO REVOKE DEFENDANT'S PRETRIAL RELEASE CONDITIONS**

Defendant Levita Almuete Ferrer, through her attorneys, submits this response to the Government's Motion to Revoke Defendant's Pretrial Release Conditions. For the reasons set forth below, Ms. Ferrer respectfully asks this Court to deny the Government's request at this time.

Ms. Ferrer appeared before this Court on April 30, 2025, and pled guilty to one count of Theft of Government Property in violation of 18 U.S.C. § 641. In her plea, Ms. Ferrer acknowledged that she had embezzled approximately $650,000 from her employer, the United States Department of State. As one of the conditions of Ms. Ferrer's release pending sentencing, the Court directed her to "refrain from entering or visiting any casino establishments." Ms. Ferrer admits that she violated this condition of release by visiting a casino in Maryland on several occasions shortly after her plea hearing. Ms. Ferrer deeply regrets that she violated the trust the Court placed in her to comply with all her conditions of release. For the reasons set forth below, Ms. Ferrer asks the Court for a second chance to prove that she is committed to compliance and is worthy of the Court's trust.

As the Government acknowledged in its Motion and at the plea hearing, Ms. Ferrer suffers from a gambling addiction. While this condition does not excuse Ms. Ferrer's violations, it is the

root cause of Ms. Ferrer's conduct (both her offense conduct and her post-plea conduct) and supports a finding that Ms. Ferrer did not wantonly violate her conditions of release. Rather, she relapsed into a serious long-standing addiction that she is working hard to treat and manage.

Gambling addiction has been the subject of significant research that has shown how difficult it is to treat and how it impairs an individual's ability to make rational decisions. In 1980, the American Psychiatric Association ("APA") first recognized pathological gambling as a mental disorder, classifying it as an "impulse control disorder." More recently, in 2013, the APA reclassified gambling disorder as an addiction-related disorder based on significant research demonstrating that pathological gambling affects the brain in similar ways as an addiction to substances like cocaine. An article on the topic states:

> Brain imaging and neurochemical tests have made a "pretty strong case that [gambling] activate[s] the reward system in much the same way that a drug does." . . . . Gamblers report cravings and highs in response to their stimulus of choice . . . . Research has shown that problem casino gamblers show increases in heart rate and salivary stress hormones as well as blood levels of norepinephrine compared with non-problem gamblers. The former also show increases in dopamine, the key player in the brain's "reward circuit." [Moreover,] brain-imaging studies show that when exposed to gambling videos, problem gamblers' brains show "important similarities" to changes in the brains of cocaine addicts when viewing a video about cocaine.

C. Holden, *Behavior Addictions Debut in The Proposed Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V),* SCIENCE, February 2010 at 935; *see generally* Nat. Ctr. for Responsible Gambling, *Gambling and the Brain: Why Neuroscience Research is Vital to Gambling Research* (2011).

Ms. Ferrer relapsed into her gambling addiction during a deeply dark period of her otherwise productive life. Ms. Ferrer is a 65-year-old United States military veteran who has dedicated her entire life to military and public service and had never been in trouble with the law until this case. In the days following the plea hearing when these violations occurred, Ms. Ferrer

was too ashamed to even tell her family or friends about her conduct and that she had pled guilty to a federal crime. Her shame and isolation drew her back into the addiction that has upended her life.

Ms. Ferrer understands the seriousness of this violation and the destructive impact that gambling has had on her life. She is working hard to get the help she needs to combat her addiction. Prior to the Government's filing, Ms. Ferrer enrolled in behavioral therapy through the Department of Veterans Affairs and in Gamblers Anonymous group meetings. In addition, Ms. Ferrer signed up for the Maryland and Virginia Voluntary Exclusion Programs (or "VEPs"). VEPs are a way for people who have a gambling problem to voluntarily ban themselves from participating in any gambling activities in a state. Most states that have legalized gambling have also established VEPs with differing requirements to help problem gamblers abstain from the activity. When you sign up for a state's VEP, casinos in that state will not let you enter during your period of enrollment in the state's VEP.[1]

On May 19, 2025, Ms. Ferrer signed up for a 5-year exclusion from casinos in the Commonwealth of Virginia. *See* attached as Exhibit 1. On May 20, 2025, Ms. Ferrer signed up for a lifetime exclusion from casinos in the state of Maryland. *See* attached as Exhibit 2. Ms. Ferrer intends to enroll in additional state VEPs in the coming weeks. We respectfully submit that Ms. Ferrer's recent enrollment in VEPs provides good cause to allow her a second chance at pre-sentence release. These programs will ensure that Ms. Ferrer cannot violate the casino-related condition of release in the future as she continues to treat her addiction.

---

[1] *See, e.g.,* Voluntary Exclusion Program: Opt Out of Gambling in Maryland, Maryland Alliance for Responsible Gambling, available at: https://www.mdgamblinghelp.org/voluntary-exclusion-program/ (providing information on Maryland's VEP).

For all these reasons, Ms. Ferrer respectfully asks this Court to allow her to remain on her current conditions of release.  While Ms. Ferrer is still in the early stages of her treatment, her enrollment in the VEPs is a significant step toward confronting her addiction and demonstrating her commitment to overcoming it.  Ms. Ferrer understands that there is only one way forward for her, and that is to restructure her life without gambling in it.  Full stop.  Ms. Ferrer is deeply remorseful that she violated the Court's trust and commits that, with the backing of these programs, she will not do so again.

## CONCLUSION

For the foregoing reasons, Ms. Ferrer respectfully asks the Court to deny the Government's motion and allow her to remain in the community and continue to seek treatment on the same conditions of release.

Respectfully submitted,

/s/ *Noah Cherry*
David Schertler (No. 367203)
Noah Cherry (No. 1742964)
Schertler Onorato Mead & Sears, LLP.
555 13th Street, N.W., Suite 500 West
Washington, D.C.  20004
Telephone:  (202) 628-4199
dschertler@schertlerlaw.com
ncherry@schertlerlaw.com

*Counsel for Levita Ferrer*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 27th day of May 2025, a true and correct copy of the foregoing was electronically filed and served on counsel for the United States through ECF.

*/s/ Noah Cherry*
